**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bryan W. Hummel and Sandra M. Dahl Living Trust,<br><br>  Plaintiff,<br><br>v.<br><br>Rushmore Loan Management LLC, et al.,<br><br>  Defendants. | No. CV-17-08034-PCT-DGC<br><br>**ORDER** |

The "Bryan W. Hummel and Sandra M. Dahl Living Trust" (the "Trust" or "Plaintiff") sued Rushmore Loan Management LLC and U.S. Bank National Association (collectively, "Defendants") seeking to quiet title and enjoin Defendants from foreclosing on real property owned by the Trust. *See* Doc. 27. U.S. Bank asserted counterclaims against the Trust and third-party claims against Bryan Hummel and Sandra Dahl in their individual capacities (collectively, the "Hummels"). *See* Doc. 37. Plaintiff and Defendants have filed cross-motions for summary judgment. Docs. 73, 78. The motions are fully briefed, and no party requests oral argument. For reasons stated below, the Court will grant summary judgment in favor of Defendants on the statute of limitations claim and deny summary judgment on all other claims.[1]

---

[1] The Hummels did not respond to U.S. Bank's motion for summary judgment on the third-party claims. U.S. Bank asks the Court to summarily grant the motion against the Hummels pursuant to Local Rule 7.2(i). Doc. 85. The Hummels, who are not represented by counsel, respond that they intended to join in the Trust's motion and response based on their "unity of interest" with the Trust. Doc. 86. The Hummels also note that they submitted affidavits in support of the Trust's response and cross-motion.

**I.  The Trust's Evidentiary Objections.**

Plaintiff objects to the majority of the affidavits and documents submitted by Defendants on the ground that the documents "were not provided in discovery[,] the individual[s] identified in the supporting affidavit[s] [were] never identified[, and the] time to complete discovery in this matter has expired." *See* Doc. 79 at 3-7. Plaintiff cites Rule 56(c) of the Federal Rules of Civil Procedure as the basis for each objection. *Id.* Other than noting these objections in its response to Defendants' statement of facts, Plaintiff makes no substantive argument in its motion and does not ask the Court to exclude the evidence or impose another sanction. Defendants do not address the objections. *See* Doc. 82.

Rule 56(c) establishes that a party moving for summary judgment must support its factual assertions by citing to materials in the record, which may include affidavits and documents. The rule further explains that a "party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Rule 56(c)(2*)*; *see also Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment."). But Plaintiff provides the Court with no analysis as to why the affidavits and documents would be inadmissible.

Under Rule 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." But Plaintiff does not cite this rule, let alone apply it to the evidence here. Nor does Plaintiff dispute the authenticity or relevancy of the documents. Indeed, many documents come from public records or are duplicative of evidence attached to Plaintiff's complaint or submitted with Plaintiff's cross-motion. It also appears that at least one of the challenged affiants, Michael Bennet, was identified as

---

*Id.* Given the Hummels' pro se status and the similarity of the claims and issues, the Court will consider the Hummels to have joined in the Trust's motion and briefing.

the preparer of Defendants' discovery responses in March 2018. *See* Doc. 79-1 at 18-29, 33-43. The Court will not hold Defendants' evidence inadmissible at this stage on the basis of Plaintiff's bare objections.

## II. Background.

The following facts are undisputed unless otherwise noted. The Hummels purchased real property in Mohave County, Arizona, in June 2003. Doc. 36-1. In September 2007, the Hummels conveyed the property to themselves as trustees of the Trust by properly recorded warranty deed. Doc. 36-2. In February 2008, the Hummels executed three agreements: a warranty deed on behalf of the Trust conveying the property to the Hummels as joint tenants (Doc. 75 at 7), a warranty deed in their individual capacities conveying the property to the Trust (Doc. 75 at 25), and a deed of trust on the property (the "DOT") securing a $410,195 loan from Countrywide Bank (Doc. 13-1 at 6; Doc. 77 at 8).[2]

In the DOT, the Hummels covenanted that they were "lawfully seised of the estate hereby conveyed and [had] the right to grant and convey the Property[.]" Doc. 75 at 14. In their loan application, the Hummels listed the Trust as an owner of the property. Doc. 81 at 9. The parties dispute whether Countrywide was advised that the Trust owned the property and whether the Hummels executed the February 2008 warranty deeds in order to satisfy Countrywide that they – not the Trust – owned the property. *Compare* Doc. 80 at 2 ("[W]e advised Countrywide that the property had been transferred to the Plaintiff . . . . Despite advising Countrywide of the transfer, Countrywide informed us

---

[2] Plaintiff denies that it executed the February 2008 warranty deed conveying the property to the Hummels and that the Hummels were trustees of the Trust in February 2008. *See* Doc. 79 at 3. These are not genuine disputes. Plaintiff provides no documentary evidence regarding who was trustee of the Trust at any time. Plaintiff simply submits affidavits from the Hummels stating that they were not trustees as of January 1, 2008. Doc. 80 at 3; Doc. 81 at 3. These self-serving affidavits do not create a genuine dispute where multiple documents clearly show that the Hummels held themselves out as trustees of the Trust in February 2008, and Plaintiff does not dispute the authenticity of these documents or the Hummels' signatures. *See F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact."). In any event, this dispute is immaterial to the issue on which the Court grants summary judgment.

- 3 -

that it was not a problem and prepared the documents for our signature."), *with* Doc. 74 at 3 ("Countrywide required that title to the Property be vested in the Hummels individually as a prerequisite to funding the Loan. To satisfy this requirement, on February 20, 2008, the Trust executed a Warranty Deed conveying the Property to the Hummels as joint tenants[.]").

Both warranty deeds are dated February 20, 2008; the DOT is dated February 21, 2008; and all three documents were signed by the Hummels before a notary on February 25, 2008. *See* Doc. 13-1 at 6-14; Doc. 75 at 7, 25. All three documents were then recorded in Maricopa County on March 4, 2008. *See* Doc. 75 at 7, 12, 25. In May 2011, the DOT was rerecorded in Mohave County "for the sole purpose of placing it of record in Mohave County which is the correct county in which it should have been recorded" and correcting an error in the property's address. Doc. 13-1 at 5. On January 30, 2015, the DOT and both warranty deeds were rerecorded in Mohave County. *See* Doc. 75 at 6, 11, 24. Defendants assert that the documents were intentionally recorded in a particular order when originally recorded in Maricopa County, but they present no evidence of the order in which the documents were recorded. *E.g.*, Doc. 73 at 5.

The beneficial interest in the DOT has been transferred a number of times and currently is owned by Defendant U.S. Bank. Defendant Rushmore is the loan servicer for U.S. Bank. *See* Doc. 77 at 2. In 2009, the Hummels defaulted on the loan. In February 2009, one of U.S. Bank's predecessors in interest sent the Hummels a notice of intent to accelerate the loan if they did not cure the default. Doc. 27-1 at 68-69. In May 2010, the Hummels filed for bankruptcy protection, which automatically stayed any potential foreclosure proceedings. Doc. 79 at 8. In February 2011, after the bankruptcy proceedings concluded, U.S. Bank's predecessor sent the Hummels a second notice of intent to accelerate. Doc. 77 at 21-22. In February 2013, a notice of trustee's sale was recorded, but the sale was cancelled the following month. Doc. 13-1 at 23-27. In January 2016, a third notice of intent to accelerate was sent to the Hummels. Doc. 77

at 24-25. In October 2016, a second notice of trustee's sale was recorded. Doc. 13-1 at 35-36. The Trust filed this action in February 2017, and the DOT was assigned to U.S. Bank in May 2017. Doc. 1; Doc. 77 at 2. In June 2017, the Court entered a preliminary injunction prohibiting a trustee's sale of the property during the pendency of this case. Doc. 26.

The Hummels have not made their April 2009 payment under the DOT or any payment since then, but they sought to modify the loan in January 2010 and March 2013. Doc. 77 at 27-37. The current loan principal balance is $404,918.11. Doc. 74 at 6; Doc. 79 at 6. Defendants assert that the property's current value is $307,839 and U.S. Bank and its predecessors have spent $40,309.55 in taxes and insurance on the property since February 2009. Doc. 77 at 4-5. Plaintiff disputes these figures, stating that Defendants have provided no evidence to support them. Doc. 79 at 6-7.

**III. Legal Standard.**

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is also appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Only disputes over facts that might affect the outcome of the suit will preclude summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

/ / /

/ / /

**IV. Discussion.**

    **A. Statute of Limitations.**

Plaintiff argues that Defendants are barred from exercising their right to foreclose under the DOT by Arizona's six-year statute of limitations. Doc. 78 at 6-10; *see* A.R.S. §§ 33-816, 12-548; *Andra R Miller Designs LLC v. US Bank NA*, 418 P.3d 1038, 1042 (Ariz. Ct. App. 2018). According to Plaintiff, the limitations period began to run when U.S. bank's predecessor sent the February 2009 acceleration letter. Doc. 78 at 6. Defendants concede that the statute of limitations for foreclosure on the entire debt begins to run when a creditor exercises its option to accelerate, but they argue that under Arizona law the 2009 letter did not validly exercise the option. Doc. 73 at 9. They argue that the limitations period instead began to run in February 2013 when the first notice of sale was recorded. *Id.* at 10. Defendants alternatively argue that if the debt was accelerated in 2009, the acceleration was revoked in 2011 by the subsequent acceleration letter. *Id.* at 10-12.

    **1. Invocation of Acceleration.**

There is a genuine dispute as to whether the acceleration clause was invoked shortly after the February 2009 letter. Under the DOT, if the Hummels default on their obligations, U.S. Bank must provide at least thirty days' notice and specify what action is required to cure the default before it can exercise its option to accelerate the debt. Doc. 75 at 19. If the default is not cured within the time prescribed, U.S. Bank "at its option may require immediate payment in full of all sums secured by [the DOT] without further demand and may invoke the power of sale[.]" *Id.*

The February 2009 letter is titled "Notice of Intent to Accelerate." Doc. 27-1 at 68-69. It states that the Hummels' loan "is in serious default," but can be cured by paying $5,739.51 or agreeing to a foreclosure alternative. *Id.* It further states that "if the default is not cured on or before March 19, 2009, the mortgage payments will be accelerated . . . , and foreclosure proceedings will be initiated at that time." *Id.* The Hummels did not cure their default.

Plaintiff focuses on the letter's indication that acceleration "will" occur if the Hummels do not cure and argues that acceleration therefore did occur on March 19, 2009, when the time to cure expired. Doc. 78 at 6. This interpretation is contrary to the DOT, the 2009 letter, and Arizona law.

Arizona's six-year limitations period "commences on the due date of each matured but unpaid installment and, as to unmatured future installments, the period commences on the date the creditor exercises the optional acceleration clause." *Navy Fed. Credit Union v. Jones*, 930 P.2d 1007, 1008 (Ariz. Ct. App. 1996); *see also Andra R Miller Designs LLC*, 418 P.3d at 1043 ("When a creditor has the power to accelerate a debt, the six-year statute of limitations begins to run on the date the creditor exercises that power."). "To exercise its option to accelerate a debt, the creditor 'must undertake some affirmative act to make clear to the debtor it has accelerated the obligation,' even if the parties contractually agree the option to accelerate a debt need not require a notice to the debtor." *Andra R Miller Designs LLC*, 418 P.3d at 1043 (quoting *Baseline Fin. Servs. v. Madison*, 278 P.3d 321, 322 (Ariz. App. 2012)) (emphasis omitted). Acts sufficient to invoke the right include commencement of foreclosure proceedings, demanding full payment before all installments are due, filing suit to collect the entire debt, and repossessing the property. *Id.*; *Baseline Fin. Servs.*, 278 P.3d at 323.

Defendants' 2009 notice of default and intent to accelerate does not "make clear" that the debt had in fact been accelerated. *Andra R Miller Designs LLC*, 418 P.3d at 1043. The letter indicates that it is not a notice of acceleration, but rather a notice of intent to accelerate in the future. And the DOT's language indicates that acceleration is not mandatory – the lender *at its option may* accelerate the debt only after the notice is sent and the cure period has expired.

Plaintiff submits affidavits from the Hummels stating that they received "numerous payoff statements from [Rushmore] indicating that the entire amount was due[.]" Doc. 80 at 4; Doc. 81 at 4. But Rushmore did not begin servicing the loan until 2017, when everyone agrees the loan had been accelerated. These statements, prepared

years later, cannot constitute the affirmative act necessary to invoke the acceleration clause in 2009.[3]

Plaintiff also submits two invoices regarding the loan from 2010 and 2011 which are addressed to the bank's foreclosure department. Doc. 79-1 at 46, 48. Defendants do not dispute that the loan was "in Countrywide's Foreclosure Department" at the time of the invoices. *See* Doc. 82-1 at 3 ¶ 5. But the parties agree that no foreclosure *proceedings* were instituted, and Plaintiff fails to explain the significance of being "in the foreclosure department." The invoices appear to be internal bank documents, which would not have provided notice to the Hummels. *See Baseline Fin. Servs.*, 278 P.3d at 323 (rejecting the argument that "an internal charge off of a debt is an act sufficient to exercise an option to accelerate" because this "merely manifests the creditor's opinion that the instrument can no longer be regarded as an asset" and "has nothing to do with demanding the total debt be paid." (internal quotation marks and ellipses omitted)).

Finally, the Hummels' affidavits state that after the cure period expired U.S. Bank's predecessors refused to accept partial payment and advised them "that the loan was in foreclosure and the entire amount was due and owing[.]" Doc. 80 at 4; Doc. 81 at 3. Although such a statement could constitute an affirmative act sufficient to invoke acceleration, *Andra R Miller Designs LLC*, 418 P.3d at 1043 (demanding payment in full is sufficient), Defendants dispute this allegation and note that the documents in the record do not support it. *See* Doc. 82-1 at 3-4. Thus, there is a genuine dispute as to whether the acceleration clause was invoked in March 2009 after the cure period expired.

### 2. **Revocation of Acceleration.**

Defendants argue that even if the acceleration clause was exercised in March 2009, it was nonetheless revoked in February 2011 when a subsequent notice of

---

[3] Plaintiff seems to suggest that the August 2017 payoff statement (Doc. 81 at 18), which lists the amounts the Hummels would need to pay to satisfy the loan in full, is evidence that Defendants considered the loan to have been accelerated in 2009 – because it calculates interest on that basis. Plaintiff does not breakdown the calculation, and Defendants dispute the assertion (Doc. 82-1 at 4 ¶ 13). But even if Defendants did believe the loan was accelerated in 2009 or calculated interest on that basis, their belief cannot constitute the affirmative act necessary to invoke the clause in 2009.

- 8 -

intent to accelerate was sent. Doc. 73 at 10-11 (citing *Steinberger v. IndyMac Mortg. Servs.*, No. CV-15-00450-PHX-ROS, 2017 WL 6040003, at *13 (D. Ariz. Jan. 12, 2017), *aff'd sub nom. Steinberger v. Ocwen Loan Servicing, LLC*, No. 17-15314, 2018 WL 3153127 (9th Cir. June 28, 2018); *Ayala v. Carrington Mortg. Servs. LLC*, No. CV-16-02156-PHX-ROS, 2017 WL 6884299 (D. Ariz. Oct. 30, 2017)). The Court agrees.

The Arizona Court of Appeals recently recognized that a creditor may unilaterally revoke its prior acceleration of a debt. *Andra R Miller Designs LLC*, 418 P.3d 1038. This requires "an affirmative act by the creditor that communicates to the debtor that the creditor has revoked the debt's acceleration." *Id.* at 1044. Another judge of this Court has found that such revocation occurs when the creditor sends the debtor a letter stating that the debtor is in default, the debtor has a right to cure the default by paying less than the full debt, and the creditor might accelerate the debt if the debtor does not cure the default. *Steinberger*, 2017 WL 6040003, at *13; *Ayala*, 2017 WL 6884299, at *3. Such statements indicate a revocation of prior acceleration because the loan default can again be cured by paying less than the full amount. *Id.* The Court finds this reasoning persuasive and that such a written notification satisfies Arizona's requirement that the creditor take an "affirmative act" communicating to the debtor that the acceleration has been revoked.

The February 2011 notice of intent to accelerate is substantially identical to the 2009 letter and contains each of the statements described in *Steinberger* and *Ayala*. *See* Doc. 27-1 at 68-69; Doc. 77 at 21-22. Any acceleration was therefore revoked in February 2011. Plaintiff presents no evidence suggesting that the clause was again invoked before the 2013 notice of trustee's sale, and this suit was filed less than six years after that notice. Defendants are therefore entitled to summary judgment on Plaintiff's claim that the statute of limitations bars Defendants from foreclosing on the property.

**B. Reasonableness.**

Plaintiff argues that even if the statute of limitations does not apply, acceleration clauses "must be exercised within a reasonable period of time[.]" Doc. 78 at 7 (citing

*United States v. Dos Cabezas Corp.*, 995 F.2d 1486, 1490-91 (9th Cir. 1993) (addressing the reasonableness of the government's delay in accelerating a debt in a subsequent deficiency judgment action); *United States v. Gottlieb*, 948 F.2d 1128, 1131 (9th Cir. 1991) (noting that the government "would be precluded from staving off operation of the statute [of limitations] inordinately by failing to make demand" (internal brackets and quotation marks omitted)); *Curry v. U.S., Small Bus. Admin.*, 679 F. Supp. 966, 969-70 (N.D. Cal. 1987) (same)). Plaintiff cites no Arizona law on this point and no case with circumstances similar to these. Even if Arizona had such a rule, there is a genuine dispute as to the reasonableness of Defendants' decision not to institute foreclosure until 2013. Plaintiff admits that some of the delay was due to the Hummels' initiation of bankruptcy proceedings, and the parties have submitted very little evidence regarding other reasons for the delays. Plaintiff is not entitled to summary judgment on this claim.

**C.   Declaratory Relief.**

Defendants seek a declaration that the DOT is a valid first-position lien against the property. Doc. 73 at 13. But Defendants do not provide the Court with sufficient evidence or argument to establish that such a declaration is warranted. Defendants' argument on this point consists of one paragraph with no citations to legal authority. *Id.* at 13-14.

Plaintiff's motion seeks summary judgment "on all counts" (Doc. 78 at 2), and its amended complaint requests that the Court declare that Plaintiff holds valid title to the property and that Defendants have no interest in the property (Doc. 27 at 7-9). But Plaintiff presents almost no argument or authority explaining why it is entitled to judgment on these claims in its motion. *See* Doc. 78.

Given the lack of evidence and legal argument on these issues, neither party has demonstrated that it is entitled to summary judgment or declaratory relief.

**D.   Defendants' Remaining Claims.**

Defendants argue that, in the event the Court denies their requested declaratory relief, they are entitled to summary judgment on three alternative theories: unjust

enrichment, equitable lien, and fraud. *See* Doc. 73 at 14-17. Given that the Court has not decided who holds title to the property or the validity of the lien, the Court cannot resolve these alternative theories at this stage.

### E. Attorneys' Fees.

Defendants request an award of reasonable attorneys' fees and costs pursuant to A.R.S. §§ 12-341, 12-341.01. Doc. 73 at 17. Because these statutes provide fees to the "successful party" in litigation and the Court does not resolve the merits of many claims in this litigation, the request is denied.

**IT IS ORDERED**:

1. Defendants Rushmore Loan Management LLC and U.S. Bank National Association's motion for summary judgment (Doc. 73) is **granted** with respect to Plaintiff's statute of limitations claim and **denied** in all other respects.

2. Plaintiff the Bryan W. Hummel and Sandra M. Dahl Living Trust's motion for summary judgment (Doc. 78) is **denied**.

3. Defendants' request for attorneys' fees (Doc. 73 at 17) is **denied**.

4. The Court will hold a telephone conference with the parties on **August 14, 2018 at 3:00 p.m.** to set a trial date. Counsel for Plaintiff shall initiate a telephone conference to include counsel for all parties and the Court. If a dial-in number is to be used, counsel for Plaintiff shall circulate an email to counsel for all parties and the Court no later than August 13, 2018 at 12:00 noon advising of the dial-in number for the telephone conference.

Dated this 7th day of August, 2018.

_____
David G. Campbell
United States District Judge